**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ADVANCED VIDEO TECHNOLOGIES LLC, | ) | |
| Plaintiff, | ) | **11 Civ. 6604 (CM)** |
| | ) | |
| vs. | ) | |
| | ) | |
| HTC CORPORATION and HTC AMERICA, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| ADVANCED VIDEO TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **11 Civ. 8909 (CM)** |
| | ) | |
| vs. | ) | |
| | ) | |
| RESEARCH IN MOTION LTD., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| ADVANCED VIDEO TECHNOLOGIES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | **12 Civ. 0918 (CM)** |
| | ) | |
| vs. | ) | |
| | ) | |
| MOTOROLA MOBILITY LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Civil Rule 56.1, Defendants Research in Motion Ltd. and Research in

Motion Corp. ("RIM"), Motorola Mobility, Inc. ("Motorola"), HTC Corp. and HTC America,

Inc. ("HTC") by and through its undersigned attorneys, hereby submit this Statement of

Undisputed Facts, in support of its Motion for Summary Judgment.

**U.S. Patent No. 5,781,788 C1**

1.      U.S. Patent No. 5,781,788 C1 ("the '788 patent") issued on July 14, 1998.  (Declaration

of Jeffri Kaminski ("Kaminski Decl.) Exhibit A, '788 patent).

2.      The '788 patent relates to the use of a single codec chip that includes both a video coder

for compressing video information and a video decoder for decompressing video

information.  (*Id*. at 1:8-13).

3.      The '788 patent describes using a separate, external DRAM for storing video data

received from a video camera.  (*Id*. at 3:43-45).

4.      Video data can also be decompressed so that the video can be viewed on a monitor or

other video output device.  (*Id*. at 3:45-52).

5.      The codec chip digitizes analog signals from a video source, so that each picture element

(or "pixel") is translated into digital information.  Digitized video information consists of a

series of "frames," each of which "can comprise close to one million pixels."  (*Id*. at 1:27-

28.)

6.   Digital video frames can be displayed rapidly in succession (*e.g.*, 30 frames per second)

to create the perception of motion.  For every second of a video, "close to thirty million

pixels per second would ordinarily need to be transmitted from a video camera to a

monitor."  (*Id*. at 1:29-31).

7.      The codec chip 12 has two "ends."  (*Advanced Video Technologies LLC v. Research in Motion Ltd., et al.*, 11-Civ-8909 ("RIM Action"), Docket Entries # 44 and 52 at 7).

8.      The chip of the '788 patent captures video signals from a "Video Source," such as a camera, and stores video information in DRAM – memory "commonly used for storage of information such as video data."  (Exhibit A, '788 patent at 3:43-46).

9.      The codec then compresses the video information stored in the DRAM and sends the compressed video information through a "transmit channel."  (*Id*. at 1:9-12, 3:46-49).

10.     To perform decompression, previously compressed video information is received via a "receive channel."  The codec decompresses the compressed video information and sends it to a "monitor" for display.  (*Id*. at Figure 1, 1:9-12, 3:47-52).

11.     To be able to use a whole macroblock cycle for estimating a macroblock, both the current frame macroblock and the previous frame search window are double buffered. A motion estimation is done for one macroblock in its search window. The next macroblock and its search window are fetched from DRAM 18 into the buffers 76 for next macroblock estimation. Because the search windows of two adjacent macroblocks overlap by sixteen pixels, the left half of the search window is obtained by shifting from the right half. Only the right half of a search window needs be fetched from DRAM 18.  (*Id*. at 4:52-55).

12.     The patent details the four segments of storage in the DRAM.  (*Id*. at 8:43-49).  Those segments are an (1) encoder frame buffer, (2) decoder frame buffer, (3) transmission channel buffer, and (4) reception channel buffer.  (*Id*.)

13.     The encoder frame buffer refers to the interim storage of data undergoing compression.

The decoder frame buffer refers to the interim storage of data undergoing

decompression.  The transmission channel buffer refers to the storage of data prior to

that data being sent out on the transmission channel.  The reception channel buffer

refers to the storage of data received on the reception channel prior to decompression.

(*Id.*)

14.     All of the asserted claims recite:

A video codec, comprising:

a single semiconductor chip providing for a video input connection from a
camera and a video output connection to a monitor of decompressed data…;
[and]

an interface connected to the chip for external connection to a separate frame
memory dynamic random access memory (DRAM) and that provides for interim
storage of incoming and outgoing video data….

(*Id.*, Reexamination Certificate at 1:41-52, 3:57-67, 4:59-67, and 6:18-29).

**Reexamination**

15.     A Notice of Reexamination Request was filed on July 27, 2004.  (Kaminski Decl. Exhibit

B).

16.     Reexamination of  claim 1 was requested of the '788 patent in view of at least a 1993

IEEE publication entitled, "A Single Chip Multistandard Video Codec," by Bose *et al.*

("Bose"), and an 1995 publication from the ISSCC entitled, "A Single Chip Videophone

Video Encoder/Decoder" by Harrand *et al.* ("Harrand").  (*Id.* at 2).

17.   On October 8, 2004 the United States Patent and Trademark Office granted the Request

    for Reexamination.  (Kaminski Decl. Exhibit C).

18.   The Examiner determined that claims 2-12 are directed to similar subject matter and, as a

    result, should also be reexamined.  (*Id*. at 3).

19.   A first Non-Final Office Action was filed on September 29, 2005.  (Kaminski Decl.

    Exhibit D).

20.   In the September 29, 2005 Action, Claim 1 was rejected under 35 U.S.C. 102(b) as being

    anticipated by BOSE et al., "A Single Chip Multi-standard Video CODEC," IEEE 1993

    Custom Integrated Circuits Conference, March 1993, pages 11.4.1-11.4.4.  (*Id*. at 2).

21.   In the September 29, 2005 Action, Claim 1 was rejected under 35 U.S.C. 102(b) as being

    anticipated by HARRAND et al., "A Single Chip Videophone Encoder/Decoder,"

    ISSCC95/Session 17/video Signal Processing/Paper FA 17.4, February 1995.  (*Id*. at 3).

22.   Claims 2-12 were confirmed patentable.  (*Id*. at 4).

23.   On November 29, 2005, Applicant filed a Response to the September 29, 2005 Non-Final

    Office Action.  (Kaminski Decl. Exhibit E).

24.   Applicant's November 29, 2005 Amendment/Request for Reconsideration included a

    request to cancel the current Claim 1 and amend without prejudice.  (*Id*. at 12).

25.   The United States Patent and Trademark Office issued a Non-Final Office Action on

    April 7, 2006.  (Kaminski Decl. Exhibit F).

26.     The Non-Final Office Action included a withdrawal of the previously granted approval for Claims 2-12 in view of the newly discovered reference(s) to Shimoda (US 5,440,345) and Lin et al. (US 5,485,214).  (*Id*. at 2).

27.     Claims 2, 13, 15-19, 24 and 26 were rejected under 35 U.S.C. 103(a) as being unpatentable over BOSE et al., "A Single Chip Multi-standard Video CODEC." IEEE 1993 Custom Integrated Circuits Conference, March 1993, pages 11.4.1-11.4.4, in view of Shimoda (US 5,440,345).  (*Id*.)

28.     Claim 8 was rejected under 35 U.S.C. 103(a) as being unpatentable over BOSE et al., "A Single Chip Multi-standard Video CODEC," IEEE 1993 Custom Integrated Circuits Conference, March 1993, pages 11.4.1-11.4.4, in view of the admitted prior art (figures 6 and 7).  (*Id*. at 5).

29.     Claims 22-23 were rejected under 35 U.S.C. 103(a) as being unpatentable over BOSE et al., "A Single Chip Multi-standard Video CODEC," IEEE 1993 Custom Integrated Circuits Conference, March 1993, pages 11.4.1-11.4.4, in view of Shimoda (US 5,440,345), as applied to claim 2 and further in view of HARRAND et al. "A Single Ship Videophone Encoder/Decoder," ISSCC95/Session 17/video Signal Processing/Paper FA 17.4 February 1995.  (*Id*. at 8).

30.     Claims 3-7, 9-12, 14, 20-21 and 25 were rejected under 35 U.S.C. 103(a) as being unpatentable over BOSE et al., "A Single Chip Multi-standard Video CODEC," IEEE 1993 Custom Integrated Circuits Conference, March 1993, pages 11.4.1-11.4.4, in view of Shimoda (US 5,440,345) and further in view of Lin et al. (US 5,485,214).  (*Id*. at 9).

31.     Applicant filed Remarks/Amendment on June 6, 2006.  (Kaminski Decl. Exhibit G).

32.     Upon entry of the Remarks/Amendment dated June 6, 2006, Claims 3-7 and 13-26 are

        pending in the reexamination.  (*Id*. at 12).

33.     Applicant cancelled Claims 2 and 8-12 without prejudice and amended Claims 3, 5-7, 13-

        15, 17, 20, 22 and 24-26.  (*Id*.)

34.     In the Remarks/Amendment dated June 6, 2006, paragraph 3, Patentee incorporated

        limitations of Claim 2 into Claims 13 and 26 which depended therefrom, with the

        exception of the limitation from Claim 2. Patentee changed the dependencies of Claims

        14, 17, 20, 22-25 to depend from Claim 13 rather than Claim 2.  (*Id*. at 12).

35.     Applicant filed an "Amendment C" submitted on October 5, 2006. Claims 3-7 and 13-26

        were pending in the reexamination proceeding. Patentee has cancelled Claims 1, 2 and 8-

        12 without prejudice.  (Kaminski Decl. Exhibit H).

36.     A Non-Final Office Action was issued on December 22, 2006.  (Kaminski Decl. Exhibit

        I).

37.     Claim 13 is rejected under 35 U.S.C. 102(e) as being anticipated by U.S. Patent

        5,491,515 to Suzuki.  (*Id*. at 4).

38.     Claims 3, 4, 14, 15, 16, 20 and 21 are rejected under 35 U.S.C. 102(e) as being

        anticipated by U.S. Patent 5,491,515 to Suzuki for the same reasons that were set forth

        for claim 13.  (*Id*. at 6).

39.     Claim 13 is rejected under U.S.C. 103(a) as being unpatentable over U.S. Patent

5,491,515 to Suzuki in view of the Bose et al. publication, "A Single Chip Multistandard

CODEC". (*Id*. at 8).

40.     Claims 3, 4, 14, 15, 16, 17-21 and 24 are rejected under U.S.C. 103(a) as being

unpatentable over U.S. Patent 5,491,515 to Suzuki in view of Bose et al. publication, "A

Single Chip Multistandard CODEC". (*Id*. at 10).

41.     Claim 5 is rejected under 35 U.S.C. 103(a) as being unpatentable over U.S. Patent

5,491,515 to Suzuki alone, or in view of the Bose et al. publication, as has been set forth

for Claim 13 above, in view of U.S. Patent 5,412,435 to Nakajima. (*Id*. at 12).

42.     Claims 6 and 26 are rejected under 35 U.S.C. 103(a) as being unpatentable over U.S.

Patent 5,491,515 to Suzuki alone, or in view of the Bose et al. publication, in view of the

U.S. Patent 5,412,435 to Nakajima, for the same reason that was set forth above for claim

5. (*Id*. at 14).

43.     On March 2, 2007 an Amendment was filed. (Kaminski Decl. Exhibit J).

44.     Upon Entry of an Amendment on March 2, 2007, Claims 3-7 and 13-26 will be pending

in this reexamination proceeding. Patentee has previously cancelled Claims 1, 2, and 8-12

without prejudice. (*Id*. at 14).

45.     A final rejection was issued on May 30, 2007. (Kaminski Decl. Exhibit K).

46.     Claim 13 is rejected under 35 U.S.C. 102(e) as being anticipated by U.S. Patent

5,491,515 to Suzuki. (*Id*. at 8).

47.    The Suzuki reference discloses a one chip video codec.  The chip includes, among other

things:

> A video input connection that provides for the connection of a video signal source
> such as a video camera; and
>
> A video output connection that provides for the connection of a video signal sink
> such as a video monitor;
>
> A memory the chip writes and reads data from.
>
> (*Id*. at 8-9).

48.    Claims 3, 4, 15, 16, 20 and 21 are rejected under 35 U.S.C. 102(e) as being anticipated by

U.S. Patent 5,491,515 to Suzuki for the same reasons that were set forth for claim 13. (*Id*.

at 10).

49.    Claim 13 is rejected under 35 U.S.C. 103(a) as being unpatentable over U.S. Patent

5,491,515 to Suzuki in view of the Bose et al. publication, "A Single Chip Multistandard

CODEC." (*Id*. at 12).

50.    The Bose reference teaches that it is conventional to use a DRAM as the memory within

a codec chip.  (*Id*. at 12-13).

51.    The examiner found, taken together, Suzuki and Bose plainly teach the claimed one chip

video codec that provides for interim storage of incoming and outgoing video data in

DRAM.  (*Id*. at 13).

52.    Claims 3, 4, 14-16, 17-21 and 24 are rejected under 35 U.S.C. 103(a) as being

unpatentable over U.S. Patent 5,491,515 to Suzuki in view of the Bose et al. publication,

"A Single Chip Multistandard CODEC."  (*Id*. at 14).

53.     Claim 5 is rejected under 35 U.S.C. 103(a) as being unpatentable over U.S. Patent

        5,491,515 to Suzuki alone, or in view of the Bose et al. publication, as has been set forth

        for Claim 13 above, in view of U.S. Patent 5,412,435 to Nakajima.  (*Id*. at 16).

54.     Claims 6 and 26 are rejected under 35 U.S.C. 103(a) as being unpatentable over U.S.

        Patent 5,491,515 to Suzuki alone, or in view of the Bose et al. publication, in view of the

        U.S. Patent 5,412,435 to Nakajima, for the same reason that was set forth above for claim

        5.  (*Id*. at 18).

55.     A teleconference between Applicants and the examiner is conducted on July 24, 2007.

        (Kaminski Decl. Exhibit L).

56.     During the teleconference, AVT proposed amending the claims to clarify the meaning of

        the incoming and outgoing video data.  (Kaminski Decl. Exhibit M ).

57.     The examiner agreed that amending the claims to recite that "the DRAM stores the

        incoming data from the camera and the outgoing data to the monitor appeared to

        distinguish" the claims over the Suzuki prior art.  (Kaminski Decl. Exhibit L at 2).

58.     The examiner also noted that, while there is support in the specification for storing the

        incoming data, there is no support in the specification for storing the outgoing video data

        to the monitor.  (*Id*. at 2).

59.     AVT submitted a response to the Final Action on July 27, 2007.  (Kaminski Decl. Exhibit

        N).

60.     To distinguish the claims from the Suzuki and Bose prior art, AVT amended the claims to

define "outgoing video data" to be "decompressed data supplied to the video output

connection to the monitor."  (*Id*. at 8, 15).

61.     Patentee Supplemental Amendment and Response to Final Office Action filed on August

13, 2007. (Kaminski Decl. Exhibit O).

62.     To distinguish the claims from the Suzuki and Bose prior art, AVT amended the claims to

define "outgoing video data" to be "decompressed data supplied to the video output

connection to the monitor." (*Id*. at 8, 13).

63.     In arguing for patentability over the Suzuki prior art, AVT stated that "Suzuki does not

disclose any kind of interim storage of video input data in DRAM or otherwise, nor does

Suzuki disclose interim storage of decompressed data supplied to the video output

connection to the monitor."  (*Id*. at 16).

64.     To distinguish Bose, AVT argued that Bose does not teach storing decompressed video

data in the DRAM:

> Therefore, Bose does not indicate that the incoming/*outgoing video data*
> passes from/to the *video ports* through an interface to/from the DRAM for
> interim storage *without being processed by other components of the chip* into
> intermediate processed video data in transit. . . .The figures support the
> position that Bose does not indicate that the input and *output video data* pass
> through an interface from/to the *video ports* to/from the DRAM for interim
> storage *without being  processed by other components of the chip* into
> intermediate processed video data.
>
> *Id.* at 20 (emphasis added).

65.   AVT argued that col. 8, lines 43-49 and col. 4, lines 63-65 of the '788 patent provided support for the DRAM serving the "function of interim storage of incoming and outgoing video data." (Kaminski Decl. Exhibit O at 15).

66.   The Examiner issued an Advisory Action filed on August 17, 2007. (Kaminski Decl. Exhibit P).

67.   As per the interview of July 30, 2007, the Examiner continued to question whether the instant disclosure provides adequate support for the changes made to the claims via the proposed amendment of July 30, 2007. (*Id*. at 3).

68.   The Examiner agrees that the instant disclosure, as originally filed, supports limitations directed to the storing of the *incoming* video within the DRAM with respect to the video system embodiment of figures 1 and 2 (as set forth in the claims of the amended claims of the proposed amendment). (*Id*. at 5).

69.   The Examiner contends that the instant disclosure, as originally filed, does not appear to support limitations directed to the storing of the outgoing video within the DRAM with respect to the video system embodiment of figures 1 and 2 (as set forth in the claims of the amended claims of the proposed amendment; i.e. wherein "outgoing" is construed as being limited to that video which is provided to the monitor. Specifically, the examiner contends that, taken alone, the description in lines 43-45 of column 3 is insufficient to support the recitation in question being that the "incoming" and "outgoing" terminology of this description may in fact be reference to the storage of the received video data being decoded and data that is being encoded for transmission, respectively. Such an interpretation appears to be consistent with the originally filed claims in the parent

application of instant '788 patent as well as the record contained therein [e.g., NOTE: lines 19-24 of claim 7 as originally filed in the parent application SN 08/437, 276; and claim 11 of the amendment 10 filed March 7, 1997 in parent application SN 08/437,276]. (*Id*. at 5-6).

70.     Additionally, the Examiner contends that he instant disclosure, as originally filed, does not support limitations directed to the storing of the incoming or outgoing video within the DRAM with respect to the embodiment of figures 3 [i.e., one in which "blocks" of data, rather than raster scan signals, appears to be received and outputted]. (*Id*. at 6-7).

71.     The Examiner maintains that the proposed amendment raises new issues that would require further search and/or consideration' and does not simplify the issues for appeal. (*Id*. at 7).

72.     AVT files a response to the Advisory Action on August 24, 2007.  (Kaminski Decl. Exhibit Q).

73.     AVT states its disagreement with the examiner's determination that there is no support for the storing of outgoing video within the DRAM.  (*Id*. at 14).

74.     AVT did not provide any rationale for its position.  (*Id*.)

75.     AVT acquiesced to the rejection and represented that "the elements referring to storing outgoing video with the DRAM have been removed" from the claims.  (*Id*.)

76.     AVT stated that in view of the removal of this language from the claims, "the point is now moot."  (*Id*.)

77.     As a result of AVT's representation, the examiner allowed the claims.  (Kaminski Decl.

         Exhibit R).

78.     The Reexamination Certificate issued on January 8, 2008.  (Exhibit A, Reexamination

         Certificate).

**Claim Construction**

79.     The Parties disputed the meaning of "interim storage of…outgoing video data." ( RIM

         Action, Docket Entry #23).

80.     AVT initially proposed that the term be construed as "temporary storage of decompressed

         or compressed video."  (Kaminski Decl. Exhibit W at 19).

81.     Following argument on claim construction, AVT revised its proposed construction to

         "temporary storage of video data that is leaving the chip after being processed."

         (Kaminski Decl. Exhibit X at 7).

82.     Defendants proposed constructions limit the outgoing video data to decompressed video

         data for output to the monitor.  (Kaminski Decl. Exhibits T at 12, U at 8-11, V at 18).

83.     The Court construed "interim storage of…outgoing video data" to mean "temporary

         storage of video data that has been decompressed prior to its passing through the video

         output connection to the monitor."  (Kaminski Decl. Exhibit S at pp. 7-9).

84.     The Court offered several bases for this determination: (1) AVT's prior reexamination

         argument.  (*Id*. at 8, 9 n. 2); (2) the recitation of separate pathways (*id*. at 7); and (3)

         reconciling the constructions of incoming and outgoing.  (*Id*. at 8).

85.    The Court  noted that, during reexamination, the examiner found that the patent failed to

       disclose support for the storage of outgoing video data, but that AVT "decided not to

       contest" that determination.  (*Id.* at 9).  As the Court explained:  "Instead, [AVT] filed a

       response in which it represented that 'elements referring to storing outgoing video data

       with the DRAM have been removed.'  If I were going to devise words to illustrate what it

       means for a patentee to give up particular claim language, I doubt I could be clearer."

       (*Id.*)

86.    The Court concluded, "AVT is now estopped to argue to the court the position that it

       declined to pursue with the PTO…."  (*Id.*)  The Court noted that "AVT argued at the

       *Markman* hearing that the Examiner had erred in his conclusion," but as the Court found,

       "that argument gets plaintiff nowhere, because AVT declined to make it where and when

       it counted – to the Examiner on reexamination.  It has been waived and abandoned."

       (*Id.*)

87.    The Court granted AVT's request for full briefing prior to any ruling on summary

       judgment on lack of written description.  (*Id*. at 10).

Dated: April 5, 2013                        **VENABLE LLP**

                                            */s/* William D. Coston (*admitted pro hac vice*)
                                            Jeffri A. Kaminski (admitted pro hac vice)
                                            Martin L. Saad (admitted pro hac vice)
                                            575 7th Street NW
                                            Washington, DC 20004
                                            Tel: (202) 344-4000
                                            Fax: (202) 344-8300
                                            wdcoston@venable.com

Joeann E. Walker
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
Tel: (212) 370-6246
Fax: (212) 307-5598
jewalker@venable.com

*Attorneys for Defendant Research In Motion, Ltd.*

**COOLEY LLP**

By: */s/ Heidi L. Keefe (admitted pro hac vice)*
Heidi L. Keefe
Jonathan Bach (JPB 9710)
1114 Avenue of the Americas
New York, NY 10036
Phone: (212) 479-6000

Admitted *Pro Hac Vice*:
Heidi L. Keefe (CA 178960)
Mark R. Weinstein (CA 193043)
Kyle D. Chen (CA 239501)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Phone: (650) 843-5000

*Attorneys for Defendant HTC Corporation and HTC America, Inc.*

**KILPATRICK TOWNSEND & STOCKTON LLP**

*/s/ Frederick Whitmer*
Frederick L. Whitmer (FW-8888)
Megan E. Bussey (MB-1220)
The Grace Building
1114 Avenue of the Americas
New York, New York 10036-7703
Tel: (212) 775-8700
Fax: (212) 775-8800
fwhitmer@kilparicktownsend.com
mbussey@kilpatricktownsend.com

16

D. Clay Holloway (*admitted pro hac vice*)
Kilpatrick Townsend & Stockton LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309-4528
Tel: (404) 815-6500
Fax: (404) 815-6555
cholloway@kilpatricktownsend.com

Steven D. Moore (*admitted pro hac vice*)
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Tel: (336) 607-7300
Fax: (336) 607-7500
smoore@kilpatricktownsend.com

*Attorneys for Defendant Motorola Mobility LLC*

**CERTIFICATE OF SERVICE**

I do hereby certify that I served a true and correct copy of the foregoing Defendants'

Statement of Undisputed Facts by this Court's ECF upon all counsel of record.

SO CERTIFIED this, the 5th day of April 2013.


/s/   William D. Coston
      William D. Coston