UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ADVANCED VIDEO TECHNOLOGIES LLC, | ) ) ) | |
| Plaintiff, | ) ) | 11 Civ. 6604 (CM) |
| vs. | ) ) | |
| HTC CORPORATION and HTC AMERICA, INC. | ) ) ) ) | |
| Defendants. | ) ) | |
| ADVANCED VIDEO TECHNOLOGIES LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | 11 Civ. 8908 (CM) |
| vs. | ) ) | |
| RESEARCH IN MOTION LTD., ET AL., | ) ) ) | |
| Defendants. | ) ) | |
| ADVANCED VIDEO TECHNOLOGIES LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | 12 Civ. 0918 (CM) |
| vs. | ) ) | |
| MOTOROLA MOBILITY LLC, | ) ) | |
| Defendant. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
STATEMENT OF FACTS**

Pursuant to Local Civil Rule 56.1, Defendants Research in Motion Ltd. and Research in Motion Corp. ("RIM"), Motorola Mobility, Inc. ("Motorola"), HTC Corp. and HTC America, Inc. ("HTC") by and through its undersigned attorneys, hereby respond to Plaintiff Advanced

1

Video Technologies, LLC's ("AVT") statement of purported material facts as to which a genuine issue allegedly exists, which AVT filed as part of its response to Defendants' Statement of Undisputed Facts in support of their Motion for Summary Judgment. (*See* Dkt. 60 at ¶¶ 88-113.) As set forth below, AVT's assertions are either immaterial to Defendants' Motion for Summary Judgment or raise no genuine issue as to any material fact.

88. As of May 8, 1995, a person of ordinary skill in the art to which the '788 Patent pertains would have at least a master's degree in electrical engineering, or a bachelor's degree with equivalent work experience and at least three years' experience in digital signal processing, including the design and development of chip sets and systems that do image and/or video processing. (Franzon Decl. ¶ 17.)

RESPONSE: Immaterial. The level of one of ordinary skill in the art would be relevant to qualify a witness to provide testimony concerning the meaning of a term or the teaching of the specification. In this case, however, the meaning of terms at issue have been decided as a matter of law, and thus any opinion on that issue is irrelevant and untimely as an improper request for reconsideration.

89. There is ample written description support in the '788 Patent for "interim storage of . . . outgoing video data." (*Id.* ¶¶ 19, 43.)

RESPONSE: No genuine issue of material fact exists here. Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction. *See* ¶¶ 1-87 of Defendants' Statement of Undisputed Material Facts.

90. There is ample written description support in the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, for the term "interim storage of . . . outgoing video data" as construed by the Court to mean "temporary storage of video data that has been decompressed prior to its passing through the video output connection to the monitor." (*Id.* ¶¶ 19, 43.)

RESPONSE: No genuine issue of material fact exists here. Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction. *See* ¶¶ 1-87 of Defendants' Statement of Undisputed Material Facts.

91. There is ample written description support in the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, for "wherein" clause [2]. (*Id.* ¶¶ 19, 43.)

RESPONSE: No genuine issue of material fact exists here. Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction. *See* ¶¶ 1-87 of Defendants' Statement of Undisputed Material Facts. In reexamination, the Examiners plainly found no written description support for "wherein" clause [2], and AVT made no effort to challenge that finding.

92. The '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, is not limited to data that is only ready for output on a NTSC or PAL compatible output devices. Other output devices include VGA monitors. (*Id.* ¶¶ 19, 31, 33.)

RESPONSE: Immaterial. The issue pursuant to the Court's claim construction is whether any fully processed video data is stored on the DRAM and then sent out to the monitor.

93. The term "interim storage of . . . outgoing video data," as described in the '788 Patent as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, is not limited to data that is only ready for output on a NTSC or PAL compatible output device. (*Id.* ¶¶ 19, 31, 33.)

RESPONSE: Immaterial. *See id.*

94. The term "interim storage of . . . outgoing video data," in the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, includes a decoded frame of pixels that are temporarily stored in DRAM 18. (*Id.* ¶¶ 35, 41.)

RESPONSE: No genuine issue of material fact exists here. Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction. *See* ¶¶ 1-87 of Defendants' Statement of Undisputed Material Facts. Moreover, as the specification makes clear, the only time DRAM is used to store data prior to being sent out of the codec chip is when data is sent out on the transmission channel from the transmission buffer (not to the monitor). (Col. 11, ll. 37-50.)

95.     The '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, discloses a single chip video encoder and decoder that uses an external DRAM 18; for the encoder, it receives an uncompressed video bit stream from a video source, encodes it and outputs an encoded video bit stream to the transmit channel, and for the decoder, the chip receives a compressed video bit stream from the receive channel, decompresses it and outputs a decoded video bit stream to a monitor or other output device. (*Id.* ¶¶ 21, 22.)

RESPONSE:  Undisputed.  *See* ¶¶ 2-14 of Defendants' Statement of Undisputed Material Facts.

96.     The '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, describes using DRAM, which stands for "dynamic random access memory." DRAM is used in systems, such as that described in the '788 Patent, for temporary storage of data. (*Id.* ¶¶ 30, 45, 46.)

RESPONSE:  Undisputed.  *See id*.

97.     The term "interim storage," as used in the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, refers to temporary storage of incoming and outgoing video data that can be compressed, uncompressed, and decompressed. (*Id.* ¶¶ 46, 47.)

RESPONSE:  No genuine issue of material fact exists here.  Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction. *See* ¶¶ 1-87 of Defendants' Statement of Undisputed Material Facts.  This statement is an improper attempt to re-construe the claim term at issue or seek reconsideration of the decided claim construction, which is the law of the case.  Thus, this statement is immaterial and irrelevant at this stage of the proceeding.

98.     In the context of the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, enough decompressed video data, *e.g.*, as much as one fully decompressed frame, is held in the DRAM for both the encoder and the decoder. (*Id.* ¶¶ 28-30, 33, 34, 36, 43.)

RESPONSE:  No genuine issue of material fact exists here.  Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction. *See* ¶¶ 1-87 of Defendants' Statement of Undisputed Material Facts.  Moreover, this statement

makes a misrepresentation of the meaning of terms used throughout the '788 patent specification. Specifically, it relies on the assumption that a "reconstructed macroblock" is the same thing as fully decompressed video data. The specification, however, is clear this is not the case. This statement relies on the assumption that "[a] video output, e.g., to the monitor 16, is provided from a reconstructed macroblock 78" means reconstructed macroblocks are sent out on the video output. This is false. As the specification makes clear, the term "macroblock" simply refers to a data structure. For example, in Column 4, lines 45-55 the specification states, "The reconstructed macroblock is the output of the decoder and is stored in the frame memory in DRAM 18 for reconstructing the next frame 't+1.'" As is clear, the "reconstructed macroblock is the output of the *decoder*" which refers a specific component of the codec chip—the "variable length coder and decoder (VLC/VLD) 36." (Col. 4, ll. 56-62.) Thus, reconstructed macroblocks are being generated by the decoder 36 and then sent to DRAM. (Col. 11, ll. 24-35.) When the codec chip then needs the reconstructed macroblock *for further processing*, it fetches the macroblock from the DRAM. (Col. 10, l. 48-Col. 11, l. 23.) There is no reference to sending fully processed video data to and from the DRAM. (Col. 9, l. 35-Col. 12, l. 49.)

   99. In the context of the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, the decoder frame buffer, one of the DRAM 18 partitions, can contain one or more uncompressed (reconstructed) frames. (*Id*. ¶¶ 28, 30, 33, 34, 36, 40-43.)

   RESPONSE:  No genuine issue of material fact exists here.  Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction. *See* ¶¶ 1-87 of Defendants' Statement of Undisputed Material Facts.  Again, the assumption in this statement is that "uncompressed" [sic, should read "decompressed"] macroblocks are the same as reconstructed macroblocks and thus are sent out from the DRAM to the monitor.  *See id*.

It is not disputed that reconstructed macroblocks are stored in the decoder frame buffer as stated above. Those macroblocks, however, are never sent out from the DRAM to the monitor.

100. In the context of the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, compressed video information is input to the video codec 12 from a receive channel 22, decompressed and output to the monitor 16 or other video output device, *e.g.*, a television set. (*Id.* ¶¶ 30, 31.)

RESPONSE: Undisputed. *See* ¶¶ 2-14 of Defendants' Statement of Undisputed Material Facts.

101. In the context of the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, decoded video data is stored in the DRAM frame memory. (*Id.* ¶¶ 33, 34, 36, 40-43.)

RESPONSE: No genuine issue of material fact exists here. Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction. *See* ¶¶ 1-87, 98 of Defendants' Statement of Undisputed Material Facts.

102. In the context of the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, "interim storage of . . . outgoing video data" is uncompressed video data input and coded to become compressed outgoing video to the transmit channel, and can also be compressed video input that is decoded to become decompressed outgoing video data to a monitor or other device. (*Id.* ¶¶ 22, 30.)

RESPONSE: Immaterial and no genuine issue of material fact exists here. Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction. *See* ¶¶ 1-87 of Defendants' Statement of Undisputed Material Facts. This statement is an improper attempt to re-construe the claim term at issue or seek reconsideration of the decided claim construction, which is the law of the case. Thus, in addition to being disputed, this statement is immaterial and irrelevant at this stage of the proceeding.

103. In the context of the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, interim storage in the DRAM of decompressed video data prior to its passing through the video output connection is fully supported by the '788 Patent. (*Id.* ¶¶ 19, 30, 33, 34, 41-43, 46.)

RESPONSE: No genuine issue of material fact exists here. Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction.

*See* ¶¶ 1-87, 98 of Defendants' Statement of Undisputed Material Facts.

104. In the context of the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, Figure 3 provides written description support for "interim storage of . . . outgoing video data," because when considered with Figure 2, macroblocks 78 are written to the decoder frame buffer in DRAM 18 prior to being output from the chip. (*Id.* ¶¶ 33-35, 37, 38, 41.)

RESPONSE: No genuine issue of material fact exists here. Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction.

*See* ¶ 98 of Defendants' Response to Plaintiff's Statement of Material Facts.

105. The disclosures in the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, 4:52-55 and 5:66-67 relate to reconstructed macroblocks. The reconstructed macroblocks that are stored in DRAM 18 during compression are the same ones that are read out of the DRAM to the output connection. (*Id.* ¶¶ 33, 34, 35, 37, 38, 41, 43, 49.)

RESPONSE: No genuine issue of material fact exists here. Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction.

*See* ¶ 98 of Defendants' Response to Plaintiff's Statement of Material Facts.

106. In the context of the '788 Patent, as understood by one of ordinary skill in the art to which the patent pertains as of May 8, 1995, the decoder frame buffer stores a fully decompressed frame of data and may also be used to store partially decoded data. (*Id.* ¶¶ 36, 39-40, 50.)

RESPONSE: No genuine issue of material fact exists here. Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction.

*See* ¶ 98 of Defendants' Response to Plaintiff's Statement of Material Facts.

107. In Reexamination No. 90/007,145, the Examiners allowed the claims for the reasons stated in the Notice of Intent to Issue *Ex Parte* Reexamination Certificate mailed on October 1, 2007. (Defs.' Exh. R, at 3-5.)

RESPONSE:  No genuine issue of material fact exists here.  Rather, this assertion is unsupported and is contradicted by the intrinsic record in light of the Court's claim construction. *See* ¶¶ 15-78 of Defendants' Statement of Undisputed Material Facts.

108.   The '788 Patent originally issued in July of 1998 and each independent claim (claims 1, 9, 11 and 12) included the term "interim storage of . . . outgoing video data." (Defs.' Exh. A.)

RESPONSE:  Immaterial.  The claims underwent reexamination and thus additional intrinsic record exists.

109.   In Reexamination No. 90/007,145 there was no rejection for lack of written description that preceded the August 17, 2007 advisory action. (Defs.' Exhs. B-R.)

RESPONSE:  Immaterial.  Claims of patents are only presumed valid; they are entitled to no deference in the face of clear of convincing evidence of invalidity.

110.   In Reexamination No. 90/007,145 the term "interim storage of . . . outgoing video data" was never rejected as lacking written description. (*Id.*)

RESPONSE:  Immaterial.  *See* ¶ 109 of Defendants' Response to Plaintiff's Statement of Material Facts.  Further, on reexamination, the original claim language cannot be rejected on written description grounds; only "subject matter added or deleted in the reexamination proceeding" – such as "wherein" clause [2] – may be rejected "on the basis of the requirements of 35 U.S.C. § 112."  *See* 37 C.F.R. § 1.552(a).  Thus, the fact that the claims were allowed out of reexamination with the referenced term means nothing with respect to satisfying the Section 112(1) written description requirement.

111.   In Reexamination No. 90/007,145 the Examiners issued a written description rejection directed towards the narrowing limitation that the "outgoing video data is decompressed data supplied to the video output connection to the monitor." (Defs.' Exh. P, at 5.)

RESPONSE:  Immaterial given the express intrinsic record, which speaks for itself.  *See* Paragraphs 68-70 of Defendants' Statement of Undisputed Material Facts.  *See also* ¶ 109 of Defendants' Response to Plaintiff's Statement of Material Facts.

112.   In Reexamination No. 90/007,145 AVT removed the elements referring to "interim storage of . . . outgoing video data." (Defs.' Exh. Q, at 15.)

RESPONSE:  Immaterial given the express intrinsic record, which speaks for itself.  *See* Paragraphs 68-70 of Defendants' Statement of Undisputed Material Facts.  *See also* ¶ 109 of Defendants' Response to Plaintiff's Statement of Material Facts.

113.   In Reexamination No. 90/007,145 AVT never represented that it was removing the term "interim storage of . . . outgoing video data." (*Id*.)

RESPONSE:  Immaterial and no genuine issue of material fact exists here.  Rather, this assertion is not supported and contradicted by the intrinsic record in light of the Court's claim construction.  *See* ¶¶ 15-78 of Defendants' Statement of Undisputed Material Facts.  *See also* ¶ 109 of Defendants' Response to Plaintiff's Statement of Material Facts.

Dated: June 7, 2013	**VENABLE LLP**

*/s/* William D. Coston (*admitted pro hac vice*)
William D. Coston (admitted pro hac vice)
Jeffri A. Kaminski (admitted pro hac vice)
Martin L. Saad (admitted pro hac vice)
575 7th Street NW
Washington, DC 20004
Tel: (202) 344-4000
Fax: (202) 344-8300
wdcoston@venable.com

Joeann E. Walker
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
Tel: (212) 370-6246
Fax: (212) 307-5598

jewalker@venable.com

*Attorneys for Defendant Research In Motion, Ltd.*

**COOLEY LLP**

By: */s/ Heidi L. Keefe (admitted pro hac vice)*
Heidi L. Keefe
Jonathan Bach (JPB 9710)
1114 Avenue of the Americas
New York, NY 10036
Phone: (212) 479-6000

Admitted *Pro Hac Vice*:
Heidi L. Keefe (CA 178960)
Mark R. Weinstein (CA 193043)
Kyle D. Chen (CA 239501)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Phone: (650) 843-5000

*Attorneys for Defendant HTC Corporation and HTC America, Inc.*

**KILPATRICK TOWNSEND & STOCKTON LLP**

*/s/ Frederick Whitmer*
Frederick L. Whitmer (FW-8888)
Megan E. Bussey (MB-1220)
The Grace Building
1114 Avenue of the Americas
New York, New York 10036-7703
Tel: (212) 775-8700
Fax: (212) 775-8800
fwhitmer@kilparicktownsend.com
mbussey@kilpatricktownsend.com


D. Clay Holloway (*admitted pro hac vice*)
Kilpatrick Townsend & Stockton LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309-4528
Tel: (404) 815-6500

Fax: (404) 815-6555
cholloway@kilpatricktownsend.com

Steven D. Moore (*admitted pro hac vice*)
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Tel: (336) 607-7300
Fax: (336) 607-7500
smoore@kilpatricktownsend.com

*Attorneys for Defendant Motorola Mobility LLC*

## CERTIFICATE OF SERVICE

I do hereby certify that I served a true and correct copy of the foregoing Defendants' Response to Plaintiff's Statement of Facts by this Court's ECF upon all counsel of record.

SO CERTIFIED this, the 7th day of June 2013.

/s/   Joeann E. Walker