UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

ADVANCED VIDEO TECHNOLOGIES LLC,

    Plaintiff,

    -against-             No. 1:11 Civ. 06604 (CM)

HTC CORPORATION AND HTC AMERICA, INC.,

    Defendant.
--------------------------------------------------------------x

ADVANCED VIDEO TECHNOLOGIES LLC,

    Plaintiff,

    -against-             No. 1:11 Civ. 08908 (CM)

BLACKBERRY, LTD. AND BLACKBERRY
CORPORATION,

    Defendant.
--------------------------------------------------------------x

ADVANCED VIDEO TECHNOLOGIES LLC,

    Plaintiff,

    -against-             No. 1:12 Civ. 00918 (CM)

MOTOROLA MOBILITY LLC,

    Defendant.
--------------------------------------------------------------x

## SANCTIONS AWARD

McMahon, J.:

  I have reviewed the submissions of the defendants following the court's award of sanctions. I have also reviewed AVT's objections to those submissions. AVT's principal objection seems to be that the court should not have awarded sanctions, which is essentially an untimely motion for reconsideration of the court's August 28 order. (Docket # 203 in 11-civ-

6604). I can ignore AVT's arguments simply because they are untimely, but I also reject them on the merits – there is no need for the court to reconsider its ruling, because I am firmly convinced that awarding sanctions was the right thing to do. Were I to reconsider anything, it would be the finding that AVT did not bring these and other infringement actions "knowing" that it did not own the patent; as I re-read the August 28 decision, I find the argument that its principals are guilty of, at a minimum, conscious avoidance on that score more persuasive than I did the first time around.

But I decline to reconsider anything.

Herewith the awards of attorneys' fees:

## 1. *HTC America*

HTC America's attorneys, the law firm of Cooley, served as "lead counsel" throughout this consolidated matter and did the lion's share of the work on the motion to dismiss for lack of subject matter jurisdiction. As a result, HTC seeks a total of $712,863 in attorney's fees -- $698,260 in its initial application, and an additional $14,603 for work on the reply to AVT's comments on its initial request. These fees cover services provided by a total of 13 attorneys and paralegals.

The court finds that the ownership/standing issue surfaced in October 2014. Time spent on these matters prior to October 2014 will not be recompensed.

I have no real quarrel with the fact that a huge amount of time was needed to unravel this particular Gordian Knot. The issues were numerous and complicated. There were issues of both fact and law to resolve. This effort involved discovery (including the litigation of a major discovery dispute), legal research, and the preparation of extensive presentations for both Magistrate Judge and the court. I know it took a lot of hours to work through this problem, because a law clerk and I spent what I consider to be an inordinate amount of time trying to understand and analyze the various issues raised by this motion – and we, unlike counsel, were not starting from scratch, but had the benefit of all the work performed by the lawyers on this case.

Furthermore, I have personally reviewed Cooley's redacted time records, and it appears to me that Cooley has carefully pruned away work done on matters not comprehended by this court's August 28 order. Cooley has also agreed to withdraw requests for some $3,064.38 in fees that arguably relate to the Rule 11 motion, which was unsuccessful. (Reply Brief in 11-civ-6604, Docket # 215, at n.2). The court further finds that the hourly rates for services performed by attorneys at Cooley were reasonable. The court notes that Cooley gave its client a 12% discount off its billable rates, which is reflected in its request (the full billable time, excluding the discount, comes to $810,072.00).

I agree with HTC that AVT's objections (to the extent that this court can understand what they are) are unpersuasive. I see no reason why AVT needs to see either Cooley's engagement letter or unredacted bills that chronicle amounts billed for matters that are not comprehended by

2

the court's August 28 order. As indicated above, this court personally reviewed the redacted time records and is satisfied that the matters for which HTC seeks reimbursement were connected with the ownership/standing issue. Hours expended and amounts charged for work done on other matters is no concern of this court's – or AVT's.

The fee request is large in part because of the complexity and uniqueness of the issue, and in part because of the number of professionals who worked on the ownership/standing assignment. I know cases like this spawn big teams at big firms, and both partners and associates end up reviewing everything and commenting on everything, while multiple paralegals perform administrative tasks. I do not suggest that this is unreasonable – everyone on the team needs to familiarize himself or herself with developments, and I recognize that many different people end up making meaningful contributions to the finished product.

But some duplication of work is inevitable, and when awarding sanctions, a court should make some effort to minimize the effects of that duplication, especially within a single firm. I have considered two different ways of doing this: (1) reducing the requested amount by a flat percentage; (2) eliminating the work of certain individuals outside of what I will describe as the "core legal team" (consisting of attorneys Ruben Chen, Kyle Chen, Lam Nguyen, and Christopher Pasich).

Approach (1) has ample precedent behind it; indeed, this court has adopted this approach in many securities fraud and other class actions to allow for duplication and prune what seemed to the court to be excessive fees. It is also easy, both to apply and to justify.

I am not inclined to Approach (2). It is apparent from the time records that Cooley lawyers who billed relative insubstantial amounts of time to this issue were consulted about aspects of the ownership/jurisdiction question that were outside the expertise of the main team of patent litigators. I see no reason why HTC should not be recompensed for the time spent by those professionals, who were called upon to address some fairly esoteric issues, going well beyond what is ordinarily seen in patent litigation.

I conclude that I will follow Approach (1), and I will apply a 20% discount (over and above the 12% already worked into the bill sent to the client) to the billable hours fees requested by HTC. That effectively takes one-third off the full value of Cooley attorneys' billable hours. This discount will allow not only some remedy for inevitable duplication of effort, but also some remedy for the fact that much of the factual work done is attributable, not only to the Rule 285 motion on which the parties prevailed, but also to the motions on which they did not prevail.

The award of attorneys' fees does not comprehend fees attributable to the work of non-lawyers. I recognize that law firms long ago "unbundled" the services of paraprofessionals, and even other staff, turning them into timekeepers and charging separately for their services. The law firms are perfectly free to do that, but the court is equally free not to include compensation for such costs in an award of sanctions.

HTC's request for reimbursement of attorneys' fees is allowed in the sum of $502,068.86.

3

HTC seeks costs in the amount of $8,652. I recognize that I inserted the word "costs" (in the phrase "costs and fees") in the August 28 decision. I wish now that I had not. "Costs" is a technical term under the Federal Rules and the court did not intend to expand it as part of the sanction. A bill of costs was filed when final judgment was entered, which should have comprehended all allowable costs, whether incurred in connection with the ownership/jurisdiction issue or otherwise; the Clerk of Court disallowed some of those costs, and that matter is on appeal to the Magistrate Judge. I decline to get involved at this point. By disallowing the requested costs I am not saying that some or all of these costs are not properly awardable under Fed. R. Civ. P. 54(d)(1), or suggesting how the Magistrate Judge should rule on the appeal. I cannot have the issue of costs litigated in two different places, and it is properly before the Magistrate Judge.

HTC should submit a judgment for attorneys' fees to the court forthwith.

### 2. *Motorola Mobility*

The defendants in the other two actions present a somewhat different issue. Because Cooley took the laboring oar on this issue from start to finish, their contributions were both relatively modest in comparison and necessarily duplicative. I received identical briefs (save for the party's name) and moving papers from each of the three defendants, so that, while there were three motions on my docket, there was really only one motion; in recognition of that fact, AVT responded to all three motions with a single brief in opposition.

That does not, however, mean that Motorola and Blackberry recover nothing by way of sanctions. AVT also sued them under what turned out to be false pretenses, and while HTC's counsel took the lead on the ownership/jurisdiction issue, the lawyers from for Blackberry and Motorola were independently responsible to protect the interests of their clients. Blackberry and Motorola will not be punished because they and their attorneys wisely concluded that the best course of action was to coordinate their efforts and allow one of the three law firms take the lead.

Motorola seeks a total of $105,420.18 -- $87,456.18 in its initial application, and an additional $17,964.00 in additional fees expended on this motion. It also seeks reimbursement of $1,659.41 in costs for discovery related to the jurisdiction motion, principally attendance at the second Gross deposition. A total of 10 "timekeepers" at Kilpatrick Townsend & Stockton LLP billed time for which recompense is sought; these included "attorneys, paralegals and staff" (I have no idea what the "staff" are, but I assume that this is a method for "unbundling" overhead costs for persons other than paralegals; I have already ruled that I will not order such amounts to be included in a sanctions award).

I have personally reviewed Kilpatrick's time records. The core attorney "team" consisted of partners Frederick Whitmer and D. Clay Holloway and senior associate Akarsh P. Belagodu. Every other "timekeeper" is staff, except for Steven D. Moore, who billed less than an hour to the matter (and that for reading the court's decision dismissing the case). The lion's share of the

4

work was done by Mr. Belagodu, who expended 155 hours, appearing at depositions, doing legal research and drafting papers.

After reviewing Motorola's time records, I conclude that it should be reimbursed for the total time expended by Attorneys Whitmer, Holloway and Belagodu. The number of hours expended by these lawyers was not unreasonable in proportion to the tasks they had to perform and in view of the "lead counsel" role played by the attorneys for HTC. The firm wisely permitted a single attorney, Mr. Belagodu, to do most of the work; I have no doubt that this kept costs down. Kilpatrick's hourly rates are reasonable and in line with the competition.

AVT's principal objection to Motorola's application is that it seeks $45,212.30 (a little more than half of the request) for matters that it believes fall outside the scope of the court's August 28 order – specifically, for time expended in taking the depositions of the inventors and previous purported owners of the '788 patent, for time related to preparing the "Rule 11 motion," and for taxation of costs.

The time expended on the depositions of the inventors and prior owners includes time relevant to the matters comprehended in the August 28 order. In particular, time spent by any of the attorneys listed above on the depositions of Homer Chang, Vivian Hsuin and Nicholas Gross is properly compensable under the court's August 28 order; time spent on the deposition of Gordon Meyer is not. Motorola needs to back that time out.

The issues comprehended by the motion for sanctions on a variety of grounds that were decided on August 28 necessarily overlapped, and Motorola did not segregate work done on any particular ground (and indeed, for the most part Mr. Belagodu referred to the motion as "the Rule 11 motion" in his time records, although the motion was obviously made on multiple grounds, only one of which was Rule 11). Seizing on language at the end of the court's August 28 decision, Motorola included all time spent on the motion, but discounted it by 30%, on the theory that the court had deemed time spent arguing Rule 11, Section 1927 and inherent power to be "negligible." That works out to 10% for each of the three grounds for relief that the court rejected.

The 30% reduction in billable fees by Motorola approximates the combination of the 12% reduction applied by Cooley when billing its client and the further 20% across-the-board reduction applied by the court; so without commenting on whether Motorola's rationale for applying an across-the-board 30% reduction is correct, I will go along with the 30% reduction. Motorola should not recover time for taxation of costs, so it needs to back out those fees as well.

With the noted amendations, Motorola's fee award is allowed. It should submit a revised calculation to conform to this order and a form of judgment as soon as possible.

### *3. Blackberry*

Blackberry seeks a total of $153,557 for work performed in connection with the motion to dismiss for lack of subject matter jurisdiction and the original sanctions motion. Blackberry does not appear to have submitted an application for additional work performed in connection

with the fee application following the issuance of the August 28 order. The law firm that performed services is Venable; a total of five attorneys and three paralegals worked on the matter.

Blackberry's fee request is appreciably higher than is Motorola's, although far less that HTC's. The two law firms representing these defendants played substantially the same role in connection with the ownership/jurisdiction issue -- which is to say, they studied the issue when it arose, participated in the relevant discovery, and evaluated the work performed by the lead firm, Cooley. I could not in good conscience award Blackberry more in sanctions that I awarded Motorola.

Furthermore, during the period for which fees are recoverable, Venable was billing Blackberry at a fixed rate of $40,000 per month for all work performed, rather than billing Blackberry on an hourly basis (fee for services), as did both Cooley and Kilpatrick Townsend. This court is not required to turn a blind eye to what the client was actually paying, or to award a windfall sum to Venable. The proper and appropriate way to award fees to Blackberry is to start from the proposition that it should receive no more than the percentage of each month's $40,000 that represents work done on the matters comprehended by the court's August 28 decision – as long as that sum does not exceed the award of fees made to Motorola. The court is awarding fees actually paid, not fees that might have been paid. From the redactions in the bills I can see that in each and every month lawyers from Venable performed work on the AVT lawsuit that had nothing to do with the ownership/jurisdiction issue or Section 285 sanctions. But there is no breakout of what percentage of the firm's work in any given month is attributable to sanctionable work and what percentage to non-sanctionable work.

So that I can properly evaluate Blackberry's fee application, its counsel must provide me, within three business days, with a month-by-month chart showing, in addition to the information in its Exhibit 1, (1) total hours billed by each professional to the AVT matter (without regard to task); (2) total hours times hourly rate billed to the AVT matter; and (3) the percentage of that total that was represented by work on matters that are compensable under the August 28 decision. As soon as I get that information, I will evaluate Blackberry's request.

This constitutes the decision and order of the court. The Clerk should remove the motions at Docket #169 in 11 Civ. 6604 and Docket # 129 in 12 Civ. 918 from the court's list of open motions. Docket #115 in 11 Civ. 8908 remains open until Blackberry resubmits its request in accordance with this opinion.

Dated: December 14, 2015

                                                               _____
                                                                                U.S.D.J.

BY ECF TO ALL COUNSEL