USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-23-16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ADVANCED VIDEO TECHNOLOGIES, LLC,**      :

                                      **Plaintiff,**      :

                        - against -          :          **REPORT AND**
                                      :          **RECOMMENDATION**
**HTC CORP., et al.,**                     :
                                      :          **11-CV-6604 (CM)(RLE)**
                                      :          **11-CV-8908**
                                      **Defendants.**      :          **12-CV-0918**

**To the HONORABLE COLLEEN MCMAHON, U.S.D.J.:**

## I.     INTRODUCTION

Defendants HTC Corporation and HTC America ("HTC"), BlackBerry LTD and

BlackBerry Corporation ("BlackBerry"), and Motorola Mobility, LLC ("Motorola")

(collectively, "Defendants") move this Court to review the Clerk of Court's taxation of costs

pursuant to 28 U.S.C. § 1920, Federal Rule of Civil Procedure ("FRCP") 54(d)(1), and S.D.N.Y.

Civ. R. ("Local Rule") 54.1.  Defendants also seek an award of additional costs for expert fees

against Plaintiff Advanced Video Technologies ("AVT") pursuant to FRCP 26(b)(4)(E).  On

October 21, 2015, the Honorable Colleen McMahon referred Defendants' motions for taxation of

costs to the undersigned.  (Doc. No. 208. [1])

For the reasons that follow, I recommend that Defendants' motions be **GRANTED IN**

**PART, and DENIED IN PART.**  I recommend that the Clerk of Court be directed to **REDUCE**

the deposition transcript award for all Defendants to **$1,462.01**, **ADD $1,417.95** to HTC's award

for copies of papers and witness fees, **GRANT** HTC's request for **$209.20** in witness fees, and

that all other amounts remain the same.  I further recommend that in expert fees related to

---

[1] Although Defendants filed separate motions for the Court's review of taxation of costs, the cases were
consolidated, and the motions are largely identical.  Thus, for the purposes of this opinion, the Court will refer to
the submissions of the lead case, 11-CV-6604, except where the requested costs differ.

discovery, HTC be awarded **$45,810.33**, that BlackBerry be awarded **$36,835.28**, and that Motorola be awarded **$12,435.33**. Because costs pursuant to Rule 26(b)(4)(E) are not to be excessive so as to impede access to discovery, *infra,* at 12, I recommend that Defendants' expert discovery fees be reduced by twenty percent (20%), for a total of **$76,064.75**.

## II.     BACKGROUND

AVT commenced these actions against HTC and Motorola on September 22, 2011, and against BlackBerry on December 6, 2011. AVT alleged that Defendants infringed its U.S. Patent No. 5,781,788. (Defendants Memorandums of Law in Support ("Defs. Mem.") at 1.) The Court granted Defendants' motions to dismiss on April 28, 2015, and entered judgment against Plaintiff on April 30, 2015, because AVT had not demonstrated that it owned any interest in the patent. (Doc. Nos. 165 and 166.)

Defendants filed notices of taxation of costs to recover costs of defending against AVT's claims. (Doc. No. 195.) In its proposed Bill of Costs, HTC requested a total of $477,881.68 in costs (Doc. No. 181-1), BlackBerry requested a total of $350,527.76 (11-CV-8908, Doc. No. 125), and Motorola requested a total of $345, 218.73. (12-CV-0918, Doc. No. 140-1.). The Clerk filed the Bill of Costs on June 26, 2015,[2] and awarded costs to HTC in the amount of $4,470.06,[3] to BlackBerry in the amount of $1,578.84,[4] and to Motorola in the amount of $4,381.94.[5] (11-CV-6604, Doc. No. 191; 11-CV 8908, Doc. No. 133; 12-0918, Doc. No. 147.)

---

[2] Signed by the Clerk of Court on June 1, 2015.
[3] The Clerk reduced fees requested for transcripts necessarily obtained for use in the case, and for witnesses. The Clerk did not award fees for exemplification and copies of papers, or for the compensation of interpreters under 28 U.S.C. § 1828. The Clerk also did not assess taxes for "other costs" in the amount of $404,479.85. (Doc. No. 191.)
[4] The Clerk entered a portion of the requested transcript fees, and did not enter any other costs. (Doc. No. 133.)
[5] The Clerk reduced fees requested for transcripts, and with the exception of fees of the clerk and for service of the summons and subpoena, did not enter any other costs. (Doc. No. 147.)

Defendants argue that they are entitled to recover additional costs pursuant to FRCP 54(d)(1) because "costs under Rule 54(d) are to be awarded as of course against the losing party in civil litigation." (Defs. Mem. at 2.) While the Clerk taxed certain costs under Local Rule 54.1, Defendants point out that the local rule reserves the power to tax additional costs to the Court, since the costs authorized by 28 U.S.C. § 1920 are broader than those that the Clerk of Court can tax. (*Id.*) Defendants therefore seek additional fees for transcripts, fees for exemplification and copies of papers, fees for witnesses, and costs for counsel attendance at depositions.[6] (*Id.* at 4.) Defendants also seek expert fees pursuant to FRCP 26(b)(4)(E), as such costs are outside the jurisdiction of the Clerk of Court. (*Id.* at 4.)

AVT objects to Defendants' request for deposition transcript costs on the basis that Defendants "do not identify any depositions that were used on their motion to dismiss . . ." (Plaintiff's Mem. in Opposition ("Pl. Mem") at 5.) AVT also opposes Defendants' request for taxable printing costs because the costs of copies sought were used for the convenience of counsel, which is not allowable under Local Rule 54(c)(5). (*Id.* at 6.) Lastly, AVT objects to awarding fees for expert witnesses to Defendants because while 28 U.S.C. § 1920(3) allows the prevailing party to recover witness fees, 28 U.S.C. § 1821 limits recovery for a witness to $40 per day and up to $75 for travel costs if the witness is not a court-appointed expert. (*Id.* at 6-7.)

---

[6] HTC asks that the Court further tax the costs for service of subpoenas. (Doc. No. 181, Ex. C.) However, the Clerk awarded these costs in full. (Doc. No. 191.) The Court understands HTC's request as seeking review of the costs for transcripts, depositions, witnesses, exemplification and copies of papers, production of documents, and counsel's attendance at depositions. (*Id.*, Exs. D – H, J.) BlackBerry asks that the Court review the Bill of Costs for transcript fees. (Doc. No. 136.) Motorola asks that the Court further tax the costs for service of summons and subpoena. (Doc. No. 140, Ex. B.) However, the Clerk awarded these costs in full. (Doc. No. 147.) The Court understands Motorola's request as seeking a review of costs for transcripts, exemplification and copies of papers, and preparation and attendance of experts at depositions. (*Id.*, Exs. C – E.)

## III.   DISCUSSION

### A.   Legal Standard for Determining Taxation of Costs

Rule 54 states that "[u]nless a federal statute, these rules, or a court order provides

otherwise, costs — other than attorneys' fees — should be allowed to the prevailing party." FED.

R. CIV. P. 54(d)(1).   "Thus, 'such an award against the losing party is the normal rule obtaining

in civil litigation, not an exception.'" *Ayiloge v. City of New York*, No. 00 Civ. 5051 (THK),

2002 WL 31907032, at *1 (S.D.N.Y. Dec. 31, 2002) (citing *Whitfield v. Scully*, 241 F.3d 264,

270 (2d Cir. 2001)).   Taxation of costs is governed by 28 U.S.C. § 1920, which explicitly grants

"[a] judge or clerk of any court of the United States" discretion to tax costs against the losing

party in any federal litigation.   The statute enumerates six categories of expenses which may be

taxed as costs: 1) fees of the court clerk and marshal; 2) fees for transcripts "necessarily obtained

for use in the case;" 3) printing fees and witness fees; 4) copying fees "where the copies are

necessarily obtained for use in the case;" 5) certain docket fees as enumerated in § 1923; and 6)

fees of court-appointed experts and interpreters.   28 U.S.C. § 1920.   Moreover, the Supreme

Court recognizes that the discretion to tax costs "should be sparingly exercised with reference to

expenses not specifically allowed by statute."   *Farmer v. Arabian American Oil Co.*, 379 U.S.

227, 235 (1964) (quoted in *V-Formation, Inc. v. Benetton Group Spa*, No. 01 Civ. 610 (HB),

2003 WL 21403326, at *2 (S.D.N.Y. June 17, 2003)).

Initially, "[t]he burden is on the prevailing party to establish to the court's satisfaction

that the taxation of costs is justified."   *John & Kathryn G. v. Bd. of Educ. of Mount Vernon Pub.*

*Sch.*, 891 F. Supp. 122, 123 (S.D.N.Y. 1995).   "After the prevailing party demonstrates the

amount of its costs and that they fall within an allowable category of taxable costs, *see* Local

Rule 54.1(a), that party enjoys a presumption that its costs will be awarded." *Patterson v. McCarron*, No. 99 Civ. 11078 (RCC), 2005 WL 735954, at *1 (S.D.N.Y. Mar. 30, 2005) (citing *Whitfield*, 241 F.3d at 270); *see also Delta Air Lines, Inc. v. August*, 450 U.S. 346, 351 (1981).

Upon motion, the Court may review the Clerk's taxation of costs. FED. R. CIV. P. 54(d)(1). "Where an unsuccessful litigant appeals the Clerk of Court's award of costs, the district court reviews the award de novo." *Karmel v. City of New York*, No. 00 Civ. 9063 (KMK), 2008 WL 216929, at *1 (S.D.N.Y. Jan. 9, 2008) (referencing *Whitfield*, 241 F.3d at 269). Because of the presumption favoring the prevailing party, the losing party bears the burden of showing why costs should not be awarded and "convincing the district court to exercise its discretion to vacate the Clerk of Court's award of costs." *Id.* at *2; *see also Ayiloge*, 2002 WL 31907032, at *1; *Whitfield*, 241 F.3d at 270.

Local Rule 54.1(c) expands on title 28 U.S.C. § 1920, identifying ten categories of items and their respective taxability: 1) transcripts; 2) depositions; 3) witness fees, mileage, and subsistence; 4) interpreting costs; 5) exemplifications and copies of papers; 6) maps, charts, models, photographs, and summaries; 7) attorneys' fees and related costs; 8) fees of masters, receivers, commissioners, and court appointed experts; 9) costs for title searches; and 10) docket and miscellaneous fees. L. R. CIV. P. 54.1(c).

## B. Defendants' Requests for Taxation of Costs

### 1. Transcript Costs

#### a. Hearing Transcripts

Pursuant to 28 U.S.C. § 1920(2), fees for printed or electronically recorded transcripts may be taxes when "necessarily obtained for use in the case." Local Rule 54.1 states that "[t]he

cost of a transcript of Court proceedings prior to or subsequent to trial is taxable only when authorized in advance or ordered by the Court." L. R. CIV. P. 54(c)(1).

HTC sought $786.86 in hearing transcript costs. (Doc. No. 180.) Motorola sought $459.54 in hearing transcript costs. (Doc. No. 140-3.) The Clerk did not tax fees for hearing transcripts. Defendants have not demonstrated that the hearing transcripts were necessarily obtained for use in the case as required by 28 U.S.C. § 1920(2), and not merely obtained for the convenience of counsel. HTC and Motorola do not identify any portion of these hearing transcripts that were used in the motions to dismiss. Furthermore, costs for hearing transcripts were not authorized in advance under Local Rule 54.1. I recommend that Defendant's requests for hearing transcript costs be **DENIED**.

### b. Deposition Transcripts

Unless otherwise ordered by the Court, the original transcript of a deposition, plus one copy, is taxable if the deposition was used or received in evidence at the trial, whether or not it was read in its entirety." L. R. CIV. P. 54.1(c)(2). The costs of depositions not used at trial may be taxed pursuant to 28 U.S.C. § 1920(2), where they "'appear to have been reasonably necessary to the litigation at the time they were taken.'" *Malloy v. City of New York*, 2000 WL 863464, at *2 (E.D.N.Y. June 23, 2000) (citing *Crush-Crawford v. Adchem Corp.*, 94 F. Supp. 2d 294, 303 (E.D.N.Y. 2000)) (citing *Sim v. N.Y. Mailer's Union No. 6*, No. 97 Civ. 2929 (HB), 1999 WL 674447, at *1 (S.D.N.Y. Aug. 30, 1999)); *see also U.S. Media Corp.*, 1999 WL 498216, at *9 ("It suffices that at the time the deposition was taken, it was reasonably expected that the transcript would be used for trial preparation."); *Moon v. Gab Kwon*, No. 99 Civ. 11810 (GEL), 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (citing *Anderson*, 132 F. Supp. 2d at 246). Therefore, "the proper inquiry is whether, at the time the deposition was taken, it

6

'appeared to be reasonably necessary.'" *Anderson*, 132 F. Supp. 2d at 246 (quoting *Elec.*

*Specialty Co. v. Int'l Controls Corp.*, 47 F.R.D. 158, 162 (S.D.N.Y. 1969)). Costs for

depositions are also taxable if the court, in ruling on a dispositive substantive motion, used them.

L. R. Civ. P. 54.1(c)(2). Costs for depositions taken solely for discovery are not taxable. *Id.*

HTC sought $40,829.11 in depositions transcripts (Doc. No. 180); Blackberry,

$29,764.70 (Doc. No. 125-3); and Motorola, $26,413.53. The Clerk awarded $1,578.84 for the

depositions of John Nicholas Gross ("Gross") and Homer Chang ("Chang"), finding that both

depositions were used for Defendants' motions to dismiss. (Doc. No. 191.) The Clerk denied

Defendants' requests for other deposition costs.

The Court agrees that Defendants have failed to show use of depositions other than those

of Gross and Chang in its motion to dismiss. Nothing in Defendants' submissions demonstrate

that the depositions of additional witnesses were used for any purpose other than discovery, or

otherwise authorized by statute, rule, or Court order. While Defendants cite 28 U.S.C. § 1919 as

a statute that permits the Court to order payment of just costs when a case is dismissed for lack

of jurisdiction, such an award is within the discretion of the Court. Defendants have not met the

presumption that is afforded to the prevailing party on a motion to dismiss, because it has not

shown that additional deposition fees are justified. *See John & Kathryn G.*, 891 F. Supp. at 123.

As submitted by HTC, the cost of the original deposition transcript of Chang plus one copy totals

$178.75. (Doc. No. 180-5.) The cost of the original deposition transcripts of Gross plus one

copy each totals $1283.26. Thus, I recommend that the Clerk's award to Defendants for the fees

for depositions of these two witnesses be **REDUCED** from $1,578.44 to **$1,462.01**.

## 2.    Counsel Fees in Attendance at Depositions

Local Rule 54.1 states that "counsel's fees and expenses in attending the taking of a
deposition are not taxable except as provided by statute, rule . . . or order of the Court." L. R.
CIV. P. 54.1(c)(2).  Local Rule 30.1 allows any party to request that the other party pay the
expense of the attendance of one attorney when a deposition is to be taken at a place more than
one hundred (100) miles from the courthouse.  "[T]he Rule contemplates that an award of
expenses made pursuant to the Rule should be made 'prior to' the deposition in question . . .
then, if the party that is required to pay such expenses ultimately prevails in the case, that party
can . . . recover those expenses as a 'cost,' taxed 'at the conclusion of the action." *Teen Model v.
Blood is the New Black*, No. 11. Civ. 5766 (GBD)(DF), 2012 WL 5838185 *2 (S.D.N.Y. Oct.
26, 2012).  Post-deposition awards under Local Rule 30.1 "appear[] contrary to what the Rule
contemplates on its face and is an exception to usual practice." *Id.; see also Scott v. WPIX, Inc.*,
No. 10 Civ. 4622 (WHP), 2012 WL 6168620 *1 (S.D.N.Y. Dec. 11, 2012) (finding that because
the defendant did not make a motion for fees and costs under Local Rule 30.1 prior to the
deposition, such costs were not taxable).  An award of such expenses under Local Rule 30.1
remains within the discretion of the Court. *See Committee Note*, L.R. CIV. P. 30.1.

HTC sought $30,593.20 in costs for counsel attendance for the depositions of eighteen
witnesses. (Doc. No. 180.)  One witness, Paul D. Franzon, was deposed on three different
occasions.  Counsel submitted evidence of travel expenses, including transportation and mileage
costs. (Doc. No. 180, Ex. J.)  For three witnesses, both counsel attended the deposition and
sought reimbursement.  Apart from Gross's deposition, it is not clear that the depositions of
witnesses were used for purposes other than discovery.  BlackBerry sought $1,108.80 in costs for
counsel's attendance.  Based on Blackberry's submissions, it is not clear which portions of

8

counsel's fees were spent on deposition attendance. Because counsel did not seek travel expenses prior to the depositions, and because the amount of expenses requested seem excessive in light of the use of the depositions in this action, I recommend that Defendants' requests for costs for counsel's attendance at depositions be **DENIED**.

### 3.    Fees for Printing, Exemplification and Copies of Papers

Pursuant to 28 U.S.C. § 1920(3), fees and disbursements for printing may be taxed as costs. The Court may also tax as costs "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Local Rule 54.1 states that "[a] copy of an exhibit is taxable if the original was not available and the copy was used or received in evidence." L. R. CIV. P. 54.1(c)(5). "In this Circuit, expenses for photocopies have been expressly identified as 'ordinarily charged to clients' and therefore recoverable . . ." *Anderson*, 132 F. Supp. 2d at 246 (ruling taxation of copying costs appropriate pursuant to 42 U.S.C. § 1988). However, "[t]he costs of copies used for the convenience of counsel or the court are not taxable." L. R. CIV. P. 54.1(c)(5). With regard to copying costs, the requesting party must at least "specif[y] what portion, if any, of [the] copying costs were incurred in creating exhibits that were used at trial or received in evidence." *Carbonell v. Acrish*, 154 F. Supp. 2d 552, 569 (S.D.N.Y. 2001).

### a.    HTC

HTC sought $24,582.30 for exemplification and copies of papers (Doc. No. 181-1), consisting of costs for the retrieval of corporate records, costs for production of documents by HTC, and costs for copying of exhibits used at depositions. (Doc. No. 180.) BlackBerry sought $1,182.36 in printing costs. The Clerk did not tax such costs because she could not determine

what amount of the costs were "actually needed and which were used for discovery purposes." (Doc. No. 191.)

Although Gross and Chang's depositions were used in HTC's motion to dismiss, and HTC listed costs for three copies used as exhibits during those depositions, HTC fails to show that the original of the exhibits was not available. *See* L. R. CIV. P. 54.1(c)(5). HTC also fails to establish why three copies of the exhibits were necessary, and not merely for the convenience of counsel.

The Court agrees with the Clerk that HTC did not clearly establish which costs for the production of documents were necessary in the case, or for its motion to dismiss. In the Declaration of Kyle D. Chen ("Chen Declaration") filed in support of Defendants' motion to dismiss, HTC identified several documents with Bates numbers attached as exhibits. (Doc. No. 102.) In its submission to the Clerk for its taxation of costs, HTC identified documents with overlapping Bates numbers used as exhibits. (Doc. No. 180.) HTC did not identify, however, which costs were associated with the exhibits used in its motion to dismiss, and which costs were associated with the production of documents for discovery purposes. Therefore, the Court cannot determine how much in fees to tax AVT for the production of documents necessarily obtained for use in the case based on identification of documents by Bates numbers provided by HTC.

The Court does find that the retrieval of several records by HTC was necessary for its motion to dismiss, as evidenced by the Chen Declaration in Support of Defendants' Motion to Dismiss for Lack of Standing, and Defendants' Memorandum of Law in Support. (Doc. Nos. 101, 102.) Defendants cited defects in AVT's chain of title to the '788 patent at issue in the case. (Doc. No. 101 at 5.) One defect was the 1992 employment contract between one of the co-

inventors and Infochips Systems ("Infochips"). (*Id.* at 5-6.) Defendants argued that the co-inventor never assigned her interest to AVT, and thus AVT lacked standing to sue. (*Id.* at 6.) Another defect argued by Defendants involved the purported patent transfers from AVC Technology, Inc. ("AVC") to Epogy Communications, Inc. ("Epogy"). (*Id.* at 6-7.)   Chen highlighted copies of all documents on file with the Secretary of State of California regarding AVC , and copies of all documents on file with the Secretary of State of California and certification by the State of Delaware regarding Epogy. (Doc. No. 102.) Judge McMahon determined that AVT had not demonstrated that it owned any interest in the '788 patent (Doc. No. 165-1 at 2, 23) ("Here, in order for AVT to acquire rights in the '788 patent, it would take an assignment from Epogy . . . but standing is determined as of the date a lawsuit is filed, and these lawsuits were filed three and four years ago.  An assignment today cannot save these cases from dismissal").

Costs for the retrieval of: (1) Delaware and California corporate records for Epogy in the amount of $148; (2) Delaware corporate records for AVC in the amount of $20; (3) Delaware and California corporate records for both AVC and Epogy in the amount of $894.95; and (4) Delaware and California corporate records for Infochips in the amount of $355, have been sufficiently justified.  I recommend that the Clerk of Court be ordered to tax fees for exemplification and copies of papers for a total of **$1,417.95.**

### b.    Motorola

Motorola sought $5,909.44 in fees for exemplification and copies of papers necessarily obtained in the case. (Doc. No. 140-3.) The Clerk did not tax such costs because she could not determine what portion of the costs were "actually needed and which were used for discovery purposes." (Doc. No. 147.) The Court agrees with the Clerk that HTC did not clearly establish

11

which costs for the production of documents were necessary for use in the case, or for its motion to dismiss. It is not clear from Motorola's submissions what services were rendered, and whether those services were rendered for discovery and/or for the convenience of counsel. (Doc. No. 140-6.) I recommend that Motorola's request for these fees be **DENIED**.

### 4.    Witness Fees, Mileage and Subsistence

For the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. §§ 1821 and 1920, absent explicit statutory or contractual authorization. *Gortat v. Capala Bros., Inc.*, 795 F.3d 292, 296 (2d Cir. 2015) (quoting *Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*, 548 U.S. 291, 301 (2006)); *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). Section 1920(3) allows for fees and disbursements for witnesses, but is limited by § 1821, which details the allowable per diem, mileage, and subsistence costs for witnesses. *See Arlington Cent. Sch. Dist. Bd.*, 548 U.S. at 292. Courts may tax as costs payment of witnesses at a per diem rate of $40, as well as reimbursement for witnesses' travel expenses. *Gortat*, 795 F.3d at 295 n.2. Witness fees are taxable if the witness takes the stand or is deposed. Subsistence pursuant to § 1821 is allowable if it is not practical for the witness to return to his or her residence from day to day. *See N.Y. Flour Distribs., Inc. v. Cargill Flour Milling*, 1996 WL 19185, at *1 (E.D.N.Y. Jan. 12, 1996); *see also DeHoust*, 1999 WL 280423, at *4. The party moving for taxation of costs must illustrate a "good reason why these witnesses needed to stay overnight." *DeHoust*, 1999 WL 280423, at *4. Local Rule 54.1 states that "[f]ees for expert witnesses are taxable only to the extent of fees for ordinary witnesses unless prior court approval was obtained." L. R. Civ. P.54.1(c)(3).

HTC sought $209.20 in fees for witnesses Gordon Mayer ("Mayer"), Gross, and Electroflip. (Doc. No. 180; Doc. No. 181-1.) The Clerk taxed $93 in costs for Gross's fees.

(Doc. No. 191.) Upon review of the record, the invoices presented by HTC indicate the dates each witness was deposed. HTC has requested the per diem attendance cost of $40 for each witness, as well as reasonable mileage costs. HTC has not requested subsistence costs for these three witnesses. (Doc. No. 181-1.) Because AVT has failed to meet its burden to overcome the presumption granting reasonable costs to HTC's witnesses, I recommend that HTC's request of $209.20 for witness fees and mileage be **GRANTED.**

**C.     Defendants' Request for Expert Costs in Responding to Discovery**

Rule 26(b)(4)(E) requires that a party seeking discovery pay experts a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D), "[u]nless manifest injustice would result." FED. R. CIV. P. 26(b)(4)(E). Rule 26(b)(4)(A) allows for the deposition of any person identified as an expert whose opinions may be presented at trial. Rule 26(b)(4)(D) governs experts employed only for trial preparation. "A court, in balancing the parties' interests, should not approve expert fees that are so high as to impair [a party's] access to necessary discovery." *Smith v. New York Presbyterian Hosp.*, No. 05 Civ. 7729 (RJS)(DF), 2012 WL 4903256, at *2 (S.D.N.Y. Oct. 12, 2012) (internal citations omitted). This Circuit has consistently held that recovery of fees for an expert's travel time and preparation time in connection with a deposition, as well as the expert's out-of-pocket expenses, are also recoverable. *See Bonner v. American Airlines*, No. 96 Civ. 4762 (KMW)(HBP), 1997 U.S. Dist. LEXIS 20836, at *3 (S.D.N.Y. Dec. 30, 1997).

In determining whether a requested expert fee is reasonable, courts have considered the following factors: (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses

13

provided; (5) the cost of living in the particular geographic area; (6) any other factor likely to be

of assistance to the court in balancing the interests implicated by Rule 26; (7) the fee actually

being charged to the party who retained him; and (8) fees traditionally charged by the expert on

related matters. *Smith*, 2012 WL 4903256, at *2 (citing *Broushet v. Target Corp.*, 274 F.R.D.

432, 433 (E.D.N.Y. 2011)). "The party that seeks reimbursement bears the burden of

demonstrating the reasonableness of the amount claimed." *Marin v. United States*, No. 06 Civ.

552(SHS), 2008 U.S. Dist. LEXIS 103294 (S.D.N.Y. Dec. 22, 2008). "When the reasonableness

of an expert's fees is not fully explained, the Court may exercise its discretion to determine a

reasonable fee." *Penberg v. HealthBridge Mgmt.*, No. 08 Civ. 1534 (CLP), 2011 U.S. Dist.

LEXIS 31022, at *49 (E.D.N.Y. Mar. 22, 2011) (citing *Carofino v. Forester*, No. 03 Civ. 6258

(PKL)(DF), 2005 U.S. Dist. LEXIS 7718 (S.D.N.Y. Apr. 29, 2005)) (collecting cases).

AVT argues that because neither Party sough reimbursement from the other, there was a

"mutual waiver of the respective [P]arties' rights under FRCP 26(b)(4)(E).   (Pl. Mem. At 2.)

AVT further argues that Defendants' application for fees pursuant to Rule 26(b) is untimely.

(*Id.*)  Defendants contend that the Parties did not mutually waive their rights, and that such

argument has no basis under the federal rules.  (Doc. No. 201.)  Defendants point out that

pursuant to Local Rule 54.1(a) they timely and properly sought costs under Rule 26(b) by

seeking costs as part of its bill of costs within thirty days after the entry of final judgment.  (*Id.*)

The Court is unaware of any written agreement or correspondence between the Parties regarding

a mutual waiver.  Although the Advisory Committee notes contemplate that a Party will seek

reimbursement near the time of the deposition, post-judgment requests for costs under Rule

26(b)(4)(E) is not a bar to recovery.  *See Lancaster v. Lord*, No. 90 Civ 5843 (RLC), 1993 U.S.

Dist. LEXIS 3986, at *8 n. 9 (S.D.N.Y. Mar. 31, 1993) (citing *Chambers v. Ingram*, 858 F.2d

14

351, 360-61 (7th Cir. 1988)).  Therefore, Defendants' request for reimbursement of expert fees incurred during the course of discovery is timely.

### a.    Dr. Nikil Jayant

Defendants retained Dr. Nikil Jayant as an invalidity expert, and split his costs.  He charged an hourly rate of $675, and spent a total of 85.25 hours related to his deposition.  (Doc. No. 181-14.)  He also incurred $4,319.45 in travel expenses.  (Doc. No. 201.)  Dr. Jayant is a John Pippin Chair Professor of Electrical and Computer Engineering at Georgia Institute of Technology, and the director of the Georgia Tech Broadband Institute.  He has made six court appearances and worked on twenty depositions.  He is a member of several professional organizations, and has received awards in fields that include engineering and patent recognition. (Doc. No. 193-5.)  Based on Dr. Jayant's expertise, experience, and the documentation provided by Defendants, the Court finds that $425 is a reasonable hourly rate.  *See Cottrell v. Bunn-O-Matic Corp.*, Civ. No. 3:12CV1559 (WWE), 2014 U.S. Dist. LEXIS 54894, at *5 (D. Conn. Apr. 21, 2014) (finding $425 a reasonable hourly deposition rate for a licensed professional engineer).

Based on the evidence submitted by Defendants of Dr. Jayant's travel expenses, the Court finds that the requested reimbursement is unreasonable.  The depositions were held on two days – March 4 and 6.  (Doc. No. 181-14.)  Dr. Jayant, however, spent three days of preparation for the first deposition on March 1 through March 3.  It is not clear that there was reason for a stay of more than three nights.  Defendants have also not sufficiently explained $145.30 in incidental expenses.  I recommend that Dr. Jayant be reimbursed $200 per night in hotel expenses for three nights, and $474.74 in flight expenses,[7] for a total of $1,074.74.  I recommend

---

[7]  Dr. Jayant chose higher fare for his flight, but submitted an estimate of the cost of coach fare.  (Doc. No. 181-14 at 19.)

that Dr. Jayant be compensated for his time spent (85.25 hours) in responding to discovery in the amount of **$37,305.99**, or **$12,435.33** for each Defendant.

### b.      HTC'S Expert Costs

HTC seeks a total of $51,247.21 in expert fees for expert fees incurred in responding to discovery for Dr. Jayant, damages expert Christopher Bokhart, and non-infringement expert Dr. Alan Bovik. (Doc. No. 181.)

Bokhart charged an hourly rate of $645, and spent a total of 26.75 hours related to his deposition. (Doc. No. 181-14; Doc. No. 201.)  Bokhart's associates charged hourly rates of $465 and $245, and spent a total of 10.75 hours related to Bokhart's deposition. (*Id.*)  Bokhart's associate also incurred $24.62 in travel expenses. (*Id.*)  HTC submitted Curriculum Vitae ("CV") for Bokhart. (Doc. No. 193-3.)  He has over twenty-five years of experience in intellectual property and business valuation. (Doc. No 193-3.)  He has testified in federal, state, and arbitration settings on the valuation of intellectual property, including patents, trademarks, copyrights and trade secrets. (*Id.*)  Based on Bokhart's expertise, experience, and the documentation provided by HTC, the Court finds that $350 is a reasonable hourly rate. *See Conte v. Newsday, Inc.*, No. 06 Civ. 4859 (JFB)(ETB), 2012 U.S. Dist. LEXIS 2243, at *11 (E.D.N.Y. Jan. 9, 2012) (approving an hourly rate of $350 for a damages expert who worked 48.3 hours to co-author an expert report, and was deposed).  Because HTC did not provide experience evidence for Bokhart's associates, the Court cannot properly analyze whether their hourly rates are reasonable.  HTC also failed to provide evidence of incurred travel expenses.  I recommend that only Bokhart be compensated for his time spent (26.75 hours) in responding to discovery in the amount of **$9,362.50**.

16

Dr. Bovik charged an hourly rate of $500, and spent a total of 56.5 hours related to his deposition. (Doc. No. 181-14.) He has thirty-six years of experience in engineering. He is a professional engineer in the State of Texas, is a "frequent consultant to legal, industrial and academic institutions," and is listed as a highly cited researcher by Thompson Reuters. (Doc. No. 193-4.) Dr. Bovik has published over 700 articles in the areas of image and video processing, computational vision, digital microscopy, and modeling of biological visual perception. He also holds several U.S. patents. (*Id.*) Based on Dr. Bovik's expertise, experience, and the documentation provided by HTC, the Court finds that $425 is a reasonable hourly rate. I recommend that Dr. Bovik be compensated in the amount of **$24,012.50**.

### c.    BlackBerry's Expert Costs

BlackBerry seeks costs in the amount of $63,882.36 for expert fees incurred in responding to discovery for Dr. Jayant from November 2014 to April 2015, for expert John Villasenor in February 2015, and for expert John Jarosz[8] in March 2015. (Doc. No. 136 at 4.)

Jarosz charged an hourly rate of $640, and spent a total of 23.5 hours related to his deposition. (Doc. No. 125-6.) He also incurred $33.60 in data purchase expenses. (*Id.*) Jarosz has testified in patent cases in several federal courts, has written a number of articles on damages in patent litigation, and has consulted in intellectual property, licensing, commercial damages and antitrust matters. (Doc. No. 137.) Based on Jarosz's expertise, experience, and the documentation provided by BlackBerry, the Court finds that $350 is a reasonable hourly rate. The Court also finds reasonable the amount incurred in data expenses. I recommend that BlackBerry be awarded **$8,258.60** in expert fees incurred for Jarosz's services.

---

[8] Although BlackBerry submitted invoices for other professionals within Analysis Group, it only provided evidence of Jarosz's experience. (*See* Doc. No. 137.) Thus, the Court will consider Jarosz's rates in making a determination on reimbursement.

Villasenor charged an hourly rate of $750, and spent a total of 37.25 hours related to his deposition. (Doc. No. 125-6.) He incurred $310.10 in travel expenses. (*Id.*) He is a professor of electrical engineering and public policy, has published over 150 papers in technical journals, and has approximately twenty issued and pending U.S. patents. (Doc. No. 137.) Based on Villasenor's expertise, experience, and the documentation provided by HTC, the Court finds that $425 is a reasonable hourly rate. Villasenor's travel expenses are reasonable for airfare, tax and a taxi to and from the airport. (Doc. No. 125-6.) I recommend that BlackBerry be awarded **$16,141.35** in expert fees incurred for his time spent (37.25 hours) and expenses.

### d.     Motorola's Expert Costs

Motorola seeks $32,692.13 in costs pursuant to Rule 26(b)(4)(E). (Doc. No. 149.) Motorola hired Dr. Jayant as its technical expert and Deloitte Financial Advisory Services LLP as its damages expert. Motorola submitted evidence of Dr. Jayant's CV and invoices for expert services, and a chart of the fees and expenses related to the preparation of depositions. (Doc. No. 140-7.) It is not clear, however, to which expert this sum is attributable. The chart lists various fees incurred by Dr. Jayant and Deloitte, but Motorola has failed to explain how it calculated the amount sought. The Court cannot therefore analyze the reasonableness of the fees requested. I recommend that Motorola's request for expert fees in the amount of $32,692.13 be **DENIED.**

### IV.     CONCLUSION

For the foregoing reasons, I recommend that the Clerk of Court be directed to **REDUCE** the deposition transcript award for all Defendants to **$1,462.01**, **ADD $1,417.95** to HTC's award for copies of papers and witness fees, **GRANT** HTC's request for **$209.20** in witness fees, and that all other amounts remain the same. I further recommend that in expert fees related to discovery, HTC be awarded **$45,810.33**, that BlackBerry be awarded **$36,835.28**, and that

Motorola be awarded **$12,435.33**.  Because costs pursuant to Rule 26(b)(4)(E) are not to be excessive so as to impede access to discovery, *infra.* at 12, I recommend that Defendants' expert discovery fees be reduced by twenty percent (20%), for a total of **$76,064.75**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Colleen McMahon, 500 Pearl Street, Room 1540, and to the chambers of the undersigned, Room 1970.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).


**SO ORDERED this** 23rd **day of February 2016.**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**